## Case No. 4,594.

### The EXCHANGE.

[Blatchf. & H. 366.] [1]

District Court, S. D. New York. March 14, 1833.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

J. D. De Lacey, for libellant.
Walter Edwards, for claimants.

BETTS, District Judge. The deposition of the master cannot be admitted. After having intervened and answered the libel, he cannot be received as a witness. If he has no interest in the suit, and is a competent witness, the owners should have moved to strike his name from the answer, and then his testimony might have been taken for the defence.

The answer sets up an agreement by the libellant to do duty as a caulker when required. This answer is not, of itself, evidence of the agreement. It would not be so in chancery, not being responsive to the allegations in the libel. It is matter of avoidance or excuse, on the part of the claimants. Moreover, such evidence would have the effect of varying the contract in the shipping articles; and I am not prepared to say, that the claimants can be permitted to vary that contract, except by proof of deceit or fraud on the part of the libellant. There is, accordingly, no proof supporting this allegation of the answer; and the contract contained in the articles having been, that the libellant should perform the duties of cook for the voyage, for wages manifestly adapted to that service, a new and different agreement cannot, under the circumstances before the court, be set up and substituted for the written one. Emergencies, arising during a voyage, may render it necessary to displace a mariner from the situation for which he shipped, and to allot him other services on board; and the acts of the master, in so doing, would be upheld by this court, whenever it was shown that the incapacity of the sailor or the health or safety of the ship's company required such change. Atkyns v. Burrows [Case No. 618]. See, also, Mitchell v. The Orozimbo [Id. 9,-667]; The Mentor [Id. 9,427]; U. S. v. Savage [Id. 16,225]. It is, indeed, alleged, that the libellant was unqualified for the business he undertook, never having been employed as cook before. But he was not disrated for that cause; and the reason offered by the answer, in justification of the exaction of different services, is, that he was shipped under an engagement to render such services whenever required. There is no legal proof of that engagement, and the court must, accordingly, consider it not to have existed. The question, then, is, whether a seaman, shipped in one capacity, at a rate of wages sufficient to compensate that service only, can be required to perform, for the voyage, services of a more difficult and important character, and which always command higher wages, without being entitled to an increase of compensation.

Had the master found it necessary or expedient, during the voyage, to promote the libellant to the place of mate, the appointment would, under the settled rules of maritime law, have carried with it a right to corresponding wages, as incident to the new position. Such changes are of frequent occurrence, and are sanctioned by admiralty courts, and the promoted seaman is awarded the wages which appertain to his changed situation.

The testimony before the court is, that the wages of a caulker, who is shipped for a voyage, are the same as those of a mate; and, if the libellant had been put to that duty during the principal part of the voyage, I should be inclined to adjudge him the same rate of payment. But, it appears that he was only occasionally transferred to that employment, and performed, for the greater part of the time, the duties of cook. The proof is by no means clear as to the period of his employment as caulker, or as to the ordinary rate of wages allowed in the ports where the services were performed. The libellant avers that he worked in the vessel, as caulker, between seventy-five and eighty days. The master denies that extent of work, and avers that it did not exceed forty days, and one of the crew testifies, that he believes it did not exceed thirty days. The master ought to have been able to make certain, from his log-book, the amount of time during which the libellant served as caulker. I shall, therefore, accept the longest period named by him as the one for which the libellant is entitled to charge. The libel avers, that caulking wages in Buenos Ayres and Bahia were $3.75 per day; that a caulker there declined to do the business required by the ship for less; and that the master refused to give it, and compelled the libellant to do the work. The answer denies that such rate of wages was allowed, and says, that no more than $2 Spanish were charged in those ports; that caulkers were known to have worked for $1 per day; and that a first rate English caulker offered to do the work for twelve paper dollars per day. No testimony is produced in support of these averments. On the part of the libellant, a witness testifies, that he has been several times to South America as an officer on board of vessels, and is a caulker by trade, and that a caulker's wages in South America are from $3 to $3.50 per day; but he does not specify the time, or what places he visited, nor does he afford the court the means of deciding whether those wages were higher or lower than the wages at Buenos Ayres when the ship was at that port. The party claiming the extra compensation is bound to show,

satisfactorily, the amount to which he is entitled. The only proof fixing, with certainty, the price the libellant's services could command per day is, what he received in this port, which nearly corresponds with the sum admitted in the master's answer to have been given at Buenos Ayres and Bahia. The lowest and not the highest sum indicated by his evidence must, accordingly, be taken, and that will be $2 per day. The libellant having performed services not stipulated for in the contract, and which must necessarily have cost the ship more in procuring them than the wages of a seaman, he is entitled to receive that extra recompense. He will be considered as having been employed at the ordinary wages allowed per day for those services, deducting the amount paid him as monthly wages.

Let it be referred to the clerk to ascertain and report the amount payable, on the principles of this decision, allowing the vessel credit for all deductions which are properly chargeable against the libellant.

Decree accordingly.